UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

    CAUSE NO. 3:20-CR-76 DRL

KHALIL M. JACKSON,

    Defendant.

## OPINION & ORDER

The government charged Khalil Jackson with sex trafficking of a minor, production of child pornography, and other charges. *See* 18 U.S.C. §§ 1591(a), 2251(a), 2252(a)(1), 2252(a)(4)(B), 2261A(2), and 2261(b). On October 2, 2020, Mr. Jackson sought to suppress his statements during a recorded interview with Task Force Officer Phillip Williams. Mr. Jackson says he made an unambiguous request for counsel and TFO Williams should have ceased his interrogation. The court held an evidentiary hearing on October 29, 2020. The court now denies the motion to suppress.

## FACTUAL FINDINGS

The government executed a search warrant on Mr. Jackson's residence on July 21, 2020. Law enforcement interviewed Mr. Jackson there for about thirty minutes through TFO Williams. TFO Williams works for the St. Joseph County Police Department and has for twenty years. Since 2012, he also has served on the FBI's Northern Indiana Violent Crimes Against Children and Human Trafficking Task Force.

In the first few minutes of the recorded interview, Mr. Jackson said, "I'd rather have a lawyer. You guys are taking me to jail. What more is there I can do to help myself?" (Ex. 1, 2:14-25; *see also* Tr. 9). TFO Williams responded to Mr. Jackson's question. About a minute after that, TFO Williams said, "I was getting ready to tell you and explain all that to you, and you said you wanted an attorney.

Now, if you want an attorney, that's fine. Or, if you want to talk to me, you can talk to me. And if we get a question you don't want to answer, don't answer." (Ex. 1, 3:25-28; *see also* Tr. 10-11).

From there, Mr. Jackson said, "here's the more educational question I have," then asking about the arrest warrant (Ex. 1). TFO Williams answered Mr. Jackson's questions. About two minutes later, TFO Williams said, "If you want to talk to me and explain your side, fine. If you want an attorney, that's fine too." (Ex. 1, 5:49-51). Six and a half minutes into the interview, TFO Williams asked Mr. Jackson, "Do you want me to read you your rights?" and Mr. Jackson responded, "You might as well tell me. I might as well." (Ex. 1, 6:28-35). TFO Williams then asked, "Are you saying you're willing to talk to me?" (Ex. 1; Tr. 9). Mr. Jackson replied, "Of course I'm willing to talk to you." (Ex. 1; Tr. 9).

TFO Williams read Mr. Jackson his *Miranda* rights, and Mr. Jackson said that he understood them. TFO Williams then began questioning Mr. Jackson, and Mr. Jackson made admissions that he seeks now to suppress. The interview ended after about thirty minutes when Mr. Jackson said, "I want a lawyer." (Tr. 10).

DISCUSSION

The Fifth and Fourteenth Amendments to the United States Constitution prohibit compelled self-incrimination and require that custodial interrogation be preceded by advice to the accused person that he has the right to remain silent and the right to the presence of an attorney. *See Edwards v. Arizona*, 451 U.S. 477, 481-82 (1981) (citing *Miranda v. Arizona*, 384 U.S. 436, 479 (1966)).

If an accused person expresses a desire to deal with a law enforcement officer only through counsel, he is "not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Id.* at 484-85. However, "if a reference is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, *Edwards* does not require that the officers stop questioning the

2

suspect." *Davis v. United States*, 512 U.S. 452, 452 (1994). "Unfortunately, in most cases . . . the difficult decision is whether the defendant's request for counsel was ambiguous." *United States v. Hunter*, 708 F.3d 938, 942 (7th Cir. 2013).

To determine whether a suspect's request for counsel was ambiguous, the court must evaluate the "request 'as ordinary people would understand' it, and 'to give a broad, rather than a narrow interpretation to a defendant's request for counsel.'" *Id.* (quoting *Connecticut v. Barrett*, 479 U.S. 523, 529 (1987)). This is a fact-intensive inquiry. *Id.* Courts "have found statements indicating a certain and present desire to consult with counsel enough to invoke a defendant's right to counsel." *Id.* (citing *Miranda*, 384 U.S. at 444-45).

Some examples illustrate the contours of this constitutional mandate. The statement, "I want an attorney before making a deal," qualifies as an unambiguous assertion of that right during police interrogation. *Edwards*, 451 U.S. at 479. A suspect who responds, "yeah I'd like to do that," when asked by law enforcement whether he wants an attorney present during interrogation likewise has unambiguously asserted his right to counsel. *Smith v. Illinois*, 469 U.S. 91, 97 (1984). A suspect's question "can I have a lawyer?" asserts that same right, *United States v. Lee*, 413 F.3d 622, 624 (7th Cir. 2005), as does the question, "I mean, but can I call one now? That's what I'm saying," *United States v. Wysinger*, 683 F.3d 784, 795-96 (7th Cir. 2012).

A suspect's use of the word "can" more likely signals an unambiguous request whereas use of words like "should" or "might" tends to suggest that he is still undecided about whether he wants a lawyer. *Hunter*, 708 F.3d at 944. Merely making an observation about the right to counsel without a specific or action-oriented request likewise will prove too ambiguous to trigger this right. For example, in *United States v. Hampton*, 885 F.3d 1016, 1019-20 (7th Cir. 2018), this circuit held that a defendant was still undecided about whether he wanted a lawyer when he said, "I haven't even gotten a chance to get a lawyer or anything."

Here, Mr. Jackson said, "I'd rather have a lawyer. You guys are taking me to jail. What more is there I can do to help myself?" Mr. Jackson's statement—"I'd rather have a lawyer"—may, if it stood alone, fall somewhere between the unambiguous request of "can I have a lawyer" and the ambiguous statement "maybe I should get a lawyer." Still, the context for this statement indicates that it was ambiguous from the perspective of a reasonable officer under the circumstances. *See Davis*, 512 U.S. at 452; *Hunter*, 708 F.3d at 942. His statement in the context of an immediate question was not specific or action-oriented, except in the sense that it asked TFO Williams a question about what could be done as Mr. Jackson further evaluated his options.

To that point, Mr. Jackson made his statement in the second conditional tense, using the modal auxiliary verb "I would rather"—objectively what ordinary reasonable persons or officers would view as expressing a conditional preference only. Giving his statement its broad and ordinary meaning, *see Hunter*, 708 F.3d at 942, the phrase "I'd rather have" in common everyday English means merely "I would prefer." And the condition that Mr. Jackson posited was whether there was anything more he could do to help himself. It was a conditional preference. Nothing from the manner in which he said these words changed that. That he *might rather have* counsel, if there was no condition under which he could help himself, wasn't enough to require TFO Williams to disengage. *See Davis*, 512 U.S. at 452. That statement, by its nature and the question that accompanied it, was ambiguous. Indeed, one need only recall Bartleby the Scrivener's oft-used phrase ("I would prefer not to.")—from Herman Melville's short story of the same name—and the great consternation it caused his employer because of its passive ambiguity to appreciate that same passive ambiguity here.

Law enforcement officers aren't required to ask clarifying questions when a suspect has made an ambiguous statement about a lawyer. *Id.* at 461; *United States v. Lee*, 413 F.3d 622, 625 (7th Cir. 2005). Mr. Jackson nonetheless argues that TFO Williams did and in doing so revealed that he understood Mr. Jackson to have requested counsel. TFO Williams said, "I was getting ready to tell

4

you and explain all that to you, and you said you wanted an attorney. Now, if you want an attorney, that's fine. Or, if you want to talk to me, you can talk to me. And if we get a question you don't want to answer, don't answer." (Ex. 1). Mr. Jackson argues that these statements show that Mr. Jackson's initial request for a lawyer was unequivocally made. But this is an objective, not subjective, inquiry. *See Davis*, 512 U.S. at 458-59. Objectively, Mr. Jackson's statement about an attorney was ambiguous, and the court views TFO Williams here as cautiously seeking clarification only—entirely consistent with an ambiguous statement about counsel.

Regardless of whether Mr. Jackson's statement about counsel was ambiguous, he initiated further communication with TFO Williams. Even after invoking the right to counsel, an accused remains subject to further interrogation by authorities if "the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards*, 451 U.S. at 484-85. After Mr. Jackson said, "I'd rather have a lawyer," he then asked what more he could do for himself and later asked the "more educational question" about his arrest warrant. At that point, TFO Williams explained to Mr. Jackson "his rights and tried to clarify his intent, which the Supreme Court has identified as 'good police practice.'" *Hampton*, 885 F.3d at 1020 (quoting *Davis*, 512 U.S. at 459).

Not to be overlooked as a pragmatic matter, Mr. Jackson made no admissions until after TFO Williams read Mr. Jackson his *Miranda* rights and Mr. Jackson said he understood them and decided to proceed without a lawyer. "A suspect who knowingly and voluntarily waives his right to counsel after having [his *Miranda* rights] explained to him has indicated willingness to deal with the police unassisted." *Davis*, 512 U.S. at 460-61. Here, Mr. Jackson indicated his willingness to deal with TFO Williams unassisted by saying "of course I'm willing to talk to you" and by acknowledging he understood his *Miranda* rights (Ex. 1). Only when Mr. Jackson later requested counsel unequivocally was the interview terminated, and then properly so.

CONCLUSION

The Fifth and Fourteenth Amendments prohibit compelled self-incrimination, but Mr. Jackson never unambiguously invoked his right to counsel during the approximate thirty minutes of his interview with TFO Williams. He instead engaged the officer. When Mr. Jackson eventually asked for counsel, TFO Williams ended the interview. Mr. Jackson's statements are admissible. The court DENIES his motion to suppress (ECF 29).

SO ORDERED.

November 6, 2020                                         *s/ Damon R. Leichty*
                                                         Judge, United States District Court